FILED
2013 Jul-01  PM 04:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DAVID FERGUSON, an individual,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.:** |
| | ) | |
| **CAPITAL ONE BANK (USA), N.A.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

**COME NOW** the Plaintiff, by and through counsel, and for his Complaint against the Defendant:

1. This action arises out of Defendant's repeated violations of state law and out of the invasions of Plaintiff's personal and financial privacy by the Defendant and its agents in their illegal efforts to collect a consumer debt from Plaintiff.

## JURISDICTION

2. Personal jurisdiction exists over Defendant as it has the necessary minimum contacts with the State of Alabama and this suit arises out of its specific conduct with Plaintiff in Alabama.

3. Subject matter jurisdiction exists and through diversity jurisdiction (28 U.S.C. Section 1332) as the amount claimed is over $75,000 and the parties are completely diverse.

## VENUE

4.    Venue is proper as Plaintiff lives in this judicial district, the events took place in this judicial district, and the Defendant does business in this judicial district.

## PARTIES

5.    Plaintiff David Ferguson (hereinafter "Plaintiff") is a natural person who is a resident and citizen of Alabama in this judicial district.

6.    Defendant Capital One Bank (USA), N.A., ("Defendant" or "Capital One[1]") is a foreign company with its principal place of business in Virginia.

## FACTUAL ALLEGATIONS

7.    The alleged debt is a personal Capital One card.

### Capital One Agrees To Payment Plan With Plaintiffs

8.    Plaintiff received a letter dated June 22, 2012 from Capital One offering to resolve the matter so the debt would not be sent to a law firm.

9.    On or about July 11, 2012, Plaintiff called Capital One in response to the letter.

---

[1] " Capital One" or "Defendant" means the named Defendant directly or through its debt collectors, employees and agents.

10. Plaintiff spoke with an employee or agent named[2] Jahmol Keller, an "accounts supervisor."

11. Capital One proposed a payment plan starting on July 27, 2012.

12. Plaintiff accepted the payment plan.

13. Capital One promised there would be no lawsuit or attorneys involved since this payment plan had been set up.

14. On or about July 27, 2012, Capital One drafted Plaintiff's account for $99, which was the agreed upon amount.

15. Capital One hid the truth, and misrepresented to Plaintiff, that Plaintiff would still be turned over to a collection law firm even though he made the settlement with Capital One.

16. Plaintiff believed Capital One when Capital One told Plaintiff that the payment plan would keep the debt from going to a lawyer.

17. Plaintiffs had no reason to believe that Capital One was lying to Plaintiffs.

18. Plaintiffs had no reason to believe Capital One was suppressing the truth from Plaintiffs.

19. The only entity in the world that would know the truth was Capital One.

---

[2] Plaintiff does not know the spellings on all of the individuals or whether these are the true names but these are the names given to Plaintiff.

20.   Plaintiff reasonably and justifiably relied on what Capital One told Plaintiff.

## Capital One Breaks Its Promise And Turns Account Over To Nathan & Nathan, A Collection Law Firm To Sue Plaintiff

21.   On or about August 2, 2012, Plaintiff received a letter from the collection law firm of Nathan & Nathan, which files lawsuits for Capital One in Alabama.

22.   Plaintiff disputed this with Nathan & Nathan as he had a settlement agreement with Capital One.

23.   On or about August 6, 2012, Plaintiff called Capital One to find out why the matter had been referred to a collection law firm.

24.   Capital One told Plaintiff that the reason the account went to Nathan & Nathan is that the payment was not made by July 21, 2012.

25.   Plaintiff informed Capital One that it was Capital One that proposed the payment date of the 27th of July.

26.   Capital One, through its representative, said there was nothing Capital One could do about this but he would have a supervisor contact Plaintiff.

27.   Later that day a supervisor believed to be named Heather Keen called Plaintiff.

28.   Through this supervisor, Capital One stated the payment had to be in by July 21, 2012, or it would go to a law firm.

29. Capital One stated that it had given Plaintiff the "wrong date" when it proposed the July 27, 2012, payment date.

30. Capital One stated the account was no longer at Capital One and no more payments could be made.

31. Capital One stated that it had no way of determining which law firm had the account.

32. Capital One did not explain why it can't figure out which law firm it sends accounts to.

33. Capital One said there was nothing that could be done as the law firm had the account.

34. Despite this, on August 27, 2012, Capital One took the second $99 payment.

35. On or about August 30, 2012, Plaintiff called Capital One to find out what was going on as the account was with a law firm but money was still being taken from Plaintiff's account.

36. The representative, on behalf of Capital One, stated that no payments could be accepted or taken from Plaintiff.

37. Capital One stated that the payment, which could not have been taken from Plaintiff, but was taken, would be refunded if a supervisor approved it.

38. Capital One promised it would call Plaintiff back through its supervisor Heather Keen that same day.

39.   Capital One did not call back that same day.

40.   Or the next day.

41.   It was only on September 4, 2012, that Plaintiff called Capital One to get Heather Keen on the phone.

42.   Capital One said it needed a screen shot to determine if it had actually taken money from Plaintiff.

43.   It is unclear why a national bank, such as Capital One, was incapable in this electronic age, to determine that it had actually taken money from Plaintiff.

44.   Capital One refused to refund Plaintiff's money until Plaintiff proved that Capital One had in fact taken the money.

45.   When Plaintiff proved the money was taken, then Capital One stated it would refund the money.

46.   Capital One only refunded the money after approximately a week and several phone calls from Plaintiff.

**<u>Capital One Sues Plaintiff Over The Debt Despite Its Promise Not To Sue</u>**

47.   After this, Capital One filed a lawsuit against Plaintiff.

48.   The lawsuit was filed on September 19, 2012.

49.   This lawsuit was on the same account.

50.   This lawsuit was designed to obtain a judgment against Plaintiff.

51.   The intent was to garnish Plaintiff's wages.

52. The intent was to garnish Plaintiff's bank accounts.

53. The lawsuit had this ominous warning in all caps: "ONCE A JUDGMENT HAS BEEN ENTERED AGAINST YOU, YOUR PAYCHECK CAN BE GARNISHED AND/OR YOUR HOME OR PROPERTY SOLD TO SATISFY THAT JUDGMENT."

54. The intent was to have a judgment appear on Plaintiff's credit reports so as to destroy his credit.

55. This lawsuit was filed after Plaintiff disputed the debt to Nathan & Nathan and before Nathan & Nathan properly validated the debt.

56. Nathan & Nathan did this at the insistence of Capital One.

57. Plaintiff filed an answer dated October 25, 2012, after hiring a law firm to defend him.

58. Plaintiff noted in his answer that "Defendant [Ferguson] had a valid settlement agreement that Plaintiff [Capital One] breached by suing Defendant [Ferguson]."

59. Before hiring a lawyer, Plaintiff called Nathan & Nathan to find out why a lawsuit was filed against him when he had disputed the debt due to the agreed upon payment arrangement.

60. Capital One, through Nathan & Nathan, told Plaintiff that he had breached the agreement as the August 27, 2012, payment was returned for "insufficient funds."

61. Plaintiff told Capital One that it had taken his money on August 27, 2012, and refunded it on September 4, 2012.

62. Capital One, through its lawyers, denied this had happened.

63. Plaintiff does not know why a bank, such as Capital One, cannot keep track of payments and refunds.

64. Capital One set out to commit fraud against Plaintiff and the continuing lies were part of a well laid out plan to lead to a lawsuit against Plaintiff.

65. Plaintiff was sued for $1000 and Capital One knows that the cost to defend Plaintiff in the bogus lawsuit is the same as the amount sued for.

66. Capital One, on the morning of trial, argued that Plaintiff had failed to make a payment which caused Capital One to sue Plaintiff.

67. The trial court continued the case to allow Capital One to examine the payment records of Plaintiff since Capital One claimed it had no way of looking at its own financial records to determine if a payment on August 27th was paid.

68. Capital One never explained why, as a bank, its records were so poor that it could not figure this out.

69. It was not until February 20, 2013, that Capital One finally admitted that the settlement agreement was valid and Plaintiff had not bounced a payment.

70. Capital One agreed to a joint stipulation of dismissal without prejudice and reinstated the original payment agreement that Plaintiff had agreed to, at Capital One's urging, in July 2012.

## Reasons For Capital One's Illegal Conduct

71. The purpose of the Defendant Capital One's lying and other wrongful conduct was to harass, annoy, abuse, or oppress Plaintiff, so that the Plaintiff would pay more every month on this debt than Capital One had agreed for Plaintiff to pay

72. The Defendant Capital One misrepresented multiple aspects about this debt including the character, amount, and legal status of the debt.

73. The collection actions from Capital One have been of a frequency and type that the natural consequence is to annoy, harass, oppress and abuse Plaintiff.

74. The calls from Capital One have been made with the frequency and content designed to annoy, harass, oppress and abuse Plaintiff.

75. Defendant Capital One has been successful as its actions have annoyed, harassed, abused, and/or oppressed Plaintiff.

76. Much to the regret of Defendant, Plaintiff refused to allow a default judgment even when lied to by Defendant Capital One and sued by Capital One's agent, Nathan & Nathan.

77. Even though Defendant Capital One knows its actions are illegal, it is perfectly willing to continue to act illegally for several reasons.

78. First, Defendant Capital One believes that most Alabama consumers will not know that it is illegal for Defendant to lie when collecting debts.

79. Second, Defendant Capital One believes that the very few Alabama consumers, who realize this is illegal for Defendant to act in this way, will be able to find representation or will otherwise take action.

80. Defendant Capital One believes that these very few Alabama consumers who do take action will either drop the matter or will file a pro se case where counsel for Capital One will be able to defeat the claims of the pro se consumer plaintiff.

81. Third, even if the Alabama consumer is able to find representation, Defendant Capital One is confident that it will not have to pay any significant damages.

82. Defendant Capital One believes that judges will not allow mental anguish to go to the jury.

83. Defendant Capital One believes no punitive damages will be assessed against it under state law.

84. Defendant Capital One believes that since it will very rarely be sued in Alabama, particularly given the large number of violations it commits in Alabama, and given that it believes (incorrectly) that it is not subject to mental anguish claims and punitive damages claims, Defendant is quite willing to continue to break the law in Alabama.

85. The above detailed conduct by Defendant Capital One reflects its knowledge and appreciation for the harm that would naturally and likely happen to Plaintiff and with full knowledge thereof that Defendant willfully, maliciously, recklessly, and/or negligently undertook its actions and it was successful in causing the harm to the Plaintiff that Defendant wanted to cause.

86. The collection activities by Defendant Capital One and its agents caused Plaintiff's stress and anguish.

87. Plaintiff has suffered actual damages as a result of these illegal collection actions by Defendant Capital One in the form of monetary loss, anger, anxiety, emotional distress, fear, frustration, damage to reputation, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy, which was due to the illegal conduct of Defendant.

## RESPONDEAT SUPERIOR LIABILITY

88.   The acts and omissions of Defendant's agents were committed within the line and scope of their agency relationship with their principal the Defendant Capital One.

89.   The acts and omissions by these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant Capital One in collecting consumer debts.

90.   By committing these acts and omissions against Plaintiff, these other debt collectors were motivated to benefit their principal the Defendant Capital One.

91.   Defendant Capital One is therefore liable to Plaintiff through the doctrine of Respondeat Superior for the wrongful, intentional, reckless, and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees and agents, including but not limited to violations of the FDCPA, and Alabama tort law, in its attempts to collect this debt from Plaintiff.

92.   Defendant Capital One negligently and/or wantonly and/or hired, retained, trained or supervised incompetent debt collectors and is thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

## CAUSES OF ACTION

## COUNT I.

## INVASION OF PRIVACY

93.   Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

94.   Alabama law recognizes Plaintiff's right to be free from invasions of privacy and Defendant Capital One violated Alabama state law as described in this Complaint.

95.   Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

96.   Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors (albeit without a private right of action), when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the**

**privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

97.   Defendant Capital One and/or its agents intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

98.   Defendant Capital One and its agents intentionally, recklessly, and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt including by filing the bogus, public lawsuit, thereby invading and intruding upon Plaintiff's right to privacy.

99.   Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

100.   The conduct of Defendant Capital One and its agents, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by Defendant which occurred in a way that would be highly offensive to a reasonable person in that position.

101.  The conduct of Defendant Capital One went beyond the bounds of reasonableness in the collection of the alleged debt for all of the reasons asserted in this Complaint and based upon the evidence which will be presented at trial.

102.  As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendant Capital One.

103.  All acts of Defendant Capital One and its agents and/or employees were committed with malice, intent, wantonness, and/or recklessness and as such Defendant is subject to punitive damages.

## COUNT II.

### NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING, TRAINING AND SUPERVISION OF INCOMPETENT EMPLOYEES OR AGENTS

104.  Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

105.  Defendant Capital One negligently, wantonly, and/or intentionally hired, retained, or supervised incompetent employees or agents, who were allowed or encouraged to violate the law as was done to Plaintiff, and are thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

106. Had Defendant Capital One hired competent employees or agents, the violations described in this Complaint would not have occurred.

107. Had Defendant Capital One properly trained and/or supervised the employees or agents, the violations described in this Complaint would not have occurred.

108. Defendant Capital One carried out its hiring, supervision and training activities in a negligent manner and also in a reckless, malicious, and/or intentional manner.

109. Defendant Capital One knew that the actions it was taking against the Plaintiff would likely, and certainly, cause the exact type of injuries and damages that Plaintiff suffered at the hands of Defendant.

## COUNT III

## NEGLIGENT, WANTON, AND INTENTIONAL CONDUCT

110. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

111. Defendant Capital One owes a duty to anyone it comes in contact with to act reasonably so as to not unreasonably cause harm.

112. Defendant Capital One has assumed a duty to act reasonably towards Plaintiff and not to unreasonably cause Plaintiff harm.

113. Defendant Capital One owes a duty to consumers against whom it is collecting to act reasonably.

114.   All of the actions described in this Complaint demonstrate that Defendant Capital One did not act reasonably towards the Plaintiff.

115.   Defendant Capital One, by its described conduct, breached its duty to act reasonably towards Plaintiff.

116.   Defendant Capital One proximately caused injuries and damages to Plaintiff which were of the precise nature that Defendant anticipated causing when it breached its duty to act reasonably.

117.   Defendant Capital One knew, or should have known, that its conduct was likely to lead to the Plaintiff's injuries yet it acted despite this knowledge.

118.   Defendant Capital One acted with full knowledge and with the design and intent to cause harm to Plaintiff.

119.   Defendant Capital One was successful in its design, intent, and plan to cause harm to Plaintiff and this is the corporate policy of Defendant when dealing with consumers who do not pay debts that Defendant alleges are owed.

120.   Defendant Capital One acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Plaintiff as set forth in this Complaint.

121.   Defendant Capital One violated all of the duties Defendant had and such violations were made intentionally, willfully, recklessly, maliciously, wantonly, and negligently.

122. It was foreseeable, and Defendant Capital One did in fact foresee it, the actions of the Defendant would lead and did lead to the exact type of harm suffered by Plaintiff.

123. Defendant Capital One acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Plaintiff as set forth in this Complaint.

124. Defendant Capital One invaded the privacy of Plaintiff as set forth in Alabama law.

125. Such negligence, malice, wantonness, recklessness, willfulness, and/or intentional conduct proximately caused the damages set forth in this complaint.

126. As a result of this conduct, action, and inaction of Defendant Capital One, Plaintiff has suffered damage as set forth in this Complaint.

## COUNT IV

## FRAUD

127. Plaintiff realleges all paragraphs as if set out here in full.

128. Defendant Capital One represented to Plaintiff that he could pay $99.00 per month on the 27th of the month starting on July 27, 2012, and the account would not go to a law firm.

129. Plaintiff relied upon the truthfulness of Defendant Capital One in this representation.

130. This was the intent of Defendant, to trick by misrepresentation and suppression, the Plaintiff into entering this agreement so Defendant Capital One could have Plaintiff sued (along with taking Plaintiff's money) which was designed to break Plaintiff's will and lead to a judgment against Plaintiff.

131. At the time of this representation, Defendant had no intention of honoring this promise.

132. Defendant Capital One never told Plaintiff the truth that it had no intention of keeping the settlement agreement.

133. Defendant Capital One suppressed the truth from Plaintiff as Defendant knew that Plaintiff would have paid on an earlier date if the Plaintiff had known the truth.

134. Plaintiff had no desire to be sued in a public lawsuit or to be turned over to a collection law firm.

135. The misrepresentations and suppressions concerned material facts relating to the payment of this alleged debt, the payment date, and the settlement of this debt.

136.  The Plaintiff properly relied upon the false statements and suppressions as no one else in the world would know the mind and intent of Defendant Capital One except for Defendant itself.

137.  The shock, dismay, fear, anger, embarrassment, humiliation, sense of betrayal, and outrage felt and experienced in the Plaintiff's body, mind, and heart, is difficult to describe.

138.  All of the actions of Defendant were taken in light of a deliberate plan, intent, and scheme.

139.  All of the misrepresentations and suppressions of material fact which were made intentionally, maliciously, recklessly, negligently, and/or innocently.

140.  The Plaintiff properly relied upon all such misrepresentations and suppressions of material facts and have been damaged thereby.

141.  At all times Defendant Capital One had an obligation to speak truthfully and to not lie to Plaintiff and to not tell half truths to Plaintiff.

142.  Defendant Capital One knew at all times the devastating effect that the fraud would have upon the Plaintiff.

143.  Plaintiff claims all damages allowable under law.

## COUNT V

## BREACH OF CONTRACT

144.  Plaintiff realleges all paragraphs as if set out here in full.

145.   Plaintiff entered into a contract with Capital One to settle the debt.

146.   Plaintiff kept Plaintiff's end of the bargain.

147.   Capital One broke its agreement.

148.   Plaintiff was damaged by the broken agreement.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant Capital One in excess of $75,000.00 for all damages allowable (including statutory, actual, compensatory, nominal and punitive), costs, expenses, fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

Respectfully Submitted,

**John G. Watts (ASB-5819-t82j)**
**M. Stan Herring (ASB-1074-n72m)**
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com
Attorneys for Plaintiff


**PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS CAUSE.**

**Attorney for Plaintiff**

**Serve defendant via certified mail at the following address:**

Capital One Bank (USA), NA
c/o Corporation Service Company
Bank of America Center, 16th Floor
1111 East Main Street
Richmond, VA 23219